UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

COLD STONE CREAMERY, INC., an
Arizona corporation; and COLD STONE
CREAMERY LEASING COMPANY,
INC., an Arizona corporation,

     Plaintiffs,

v.

LENORA FOODS, I, LLC, a Florida
limited liability company; LENORA
FOODS II, LLC, a Florida limited liability
company; LENORA FOODS, III, LLC, a
Florida limited liability company; CECIL
D. ROLLE, individually; and
JACQUETTE ROLLE, individually,

     Defendants.

Case No. 4:07cv 303-RH/wcs
Florida Bar No. 0393517

## VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

Plaintiffs, COLD STONE CREAMERY, INC. and COLD STONE CREAMERY

LEASING COMPANY, INC., for their verified complaint against defendants, LENORA

FOODS I, LLC, LENORA FOODS II, LLC, LENORA FOODS III, LLC, CECIL D.

ROLLE and JACQUETTE ROLLE, allege as follows:

OFFICE OF CLERK
U.S. DISTRICT CT.
NORTHERN DIST. FLA.
TALLAHASSEE, FLA.

2007 JUL -3 PM 3: 49

FILED

## PARTIES, JURISDICTION AND VENUE

1.      Plaintiff, Cold Stone Creamery, Inc. ("Cold Stone Creamery"), is a corporation organized and existing under the laws of the State of Arizona with its principal place of business located in Scottsdale, Arizona.

2.      Plaintiff, Cold Stone Creamery Leasing Company, Inc. ("Cold Stone Leasing"), is a corporation organized and existing under the laws of the State of Arizona with its principal place of business located in Scottsdale, Arizona.

3.      Defendant, Lenora Foods I, LLC ("Lenora I"), is a limited liability company organized and existing under the laws of the State of Florida with its principal place of business located in Tallahassee, Florida.

4.      Defendant, Lenora Foods II, LLC ("Lenora II"),  is a limited liability company organized and existing under the laws of the State of Florida with its principal place of business located in Tallahassee, Florida.

5.      Defendant, Lenora Foods III, LLC ("Lenora III"), is a limited liability company organized and existing under the laws of the State of Florida with its principal place of business located in Ocala, Florida.

6.      Defendant, Cecil D. Rolle, on information and belief, is a citizen of the State of Florida residing in Tallahassee, Florida, and is not a member of the United States Military.

7.      Defendant Jacquette Rolle (together with Cecil D. Rolle, the "Individual Defendants"), on information and belief, is a citizen of the State of Florida residing in Tallahassee, Florida, and is not a member of the United States Military.

8.      Certain of the claims asserted in this action arise under the Trademark Act of 1946 ("Lanham Act"), 15 U.S.C. § 1051, *et seq.*

9.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338, 15 U.S.C. § 1121, and with respect to certain claims, 28 U.S.C. § 1367.

10.     Venue is proper pursuant to 28 U.S.C. §§1392(a)(1), 1391(a)(2), 1392(b)(1), and 1391(b)(2) because a substantial part of the events giving rise to this action occurred within this judicial district and some or all of the defendants reside in this District.

11.     Cold Stone Creamery and Cold Stone Leasing have retained the law firm of Greenberg Traurig, P.A. to represent it in this action, and have agreed to pay the firm a reasonable fee for its services herein, along with all costs and expenses of this action. The federal statutes, as well as contractual franchise agreements and sublease agreements referenced herein and upon which suit is based, include provisions concerning attorney fees and costs.

## ALLEGATIONS COMMON TO ALL COUNTS

### The Cold Stone Creamery Marks

12.     Cold Stone Creamery is one of the largest franchisors of premium ice cream in the United States. Through its franchisees, Cold Stone Creamery sells ice cream creations, shakes, cakes and smoothies, among other products, and currently has approximately 1400 stores open throughout the world with approximately 600 agreements in place for future locations.

13.     Cold Stone Creamery has developed a distinctive system relating to the establishment, development and operation of a Cold Stone Creamery store, utilizing various proprietary recipes, business systems, advertising, marketing and promotion, all under the trade name Cold Stone Creamery®.

14.     Cold Stone Creamery has the exclusive right to sublicense the use of various trademarks, trade names, and service marks (which are on the principal register of the United States Patent and Trademark Office), logos, and derivations thereof (the "Cold Stone Creamery Marks"), as well as the distinctive Cold Stone Creamery System (the "System"), which provides ice cream/restaurant services to the public under the Cold Stone Creamery name.

15.     Cold Stone Creamery has continuously used the Cold Stone Creamery Marks since the date of their registration and these marks are in full force and effect pursuant to 15 U.S.C. § 1065.

16.     Cold Stone Creamery has given notice to the public of the registration of the Cold Stone Creamery Marks, as provided in 15 U.S.C. § 1111.

17.     Cold Stone Creamery has invested substantial money and effort to develop goodwill in its trademarks, trade names, and service marks to cause consumers throughout the United States and abroad to recognize the Cold Stone Creamery Marks as distinctly designating Cold Stone Creamery high-quality goods as originating with Cold Stone Creamery.

18.     The value of the goodwill developed in the Cold Stone Creamery Marks is substantial.

19.     Through its franchise system, Cold Stone Creamery mark, promotes and provides services to its franchisees. In order to identify the origin of their services, Cold Stone Creamery allows its franchisees to utilize the Cold Stone Creamery Marks.

20.     As a result of the efforts and expenditures of Cold Stone Creamery and its affiliates, the Cold Stone Creamery Marks have become associated in the minds of the consumer public with uniform products of consistently high quality, sold only in clean

and attractive stores, and operated by persons following substantially identical sales and operating methods and procedures.

21.    The substantial efforts of Cold Stone Creamery include, but are not limited to: (1) the development, improvement and maintenance of the highest quality product; (3) the development of methods of improving the quality, taste and uniformity of products sold by Cold Stone Creamery franchisees; (4) the development of uniform designs and markings for containers in which Cold Stone Creamery products are sold to consumers; (5) the licensing of the use of other trademarks of Cold Stone Creamery to its franchisees; and (6) the training and education of franchisees, store operators and employees in the proper operation of a Cold Stone Creamery restaurant.

### The Franchise Agreements

### The FSU Campus Store

22.    On June 16, 2004, Cold Stone Creamery entered into a franchise agreement with Lenora I  for the operation of a Cold Stone Creamery restaurant ("FSU Franchise Agreement"), which later opened and is operating at 1444 West Tennessee Street, Suite 2, Tallahassee, Florida 32304 (Store # 1605).  A true copy of the FSU Franchise Agreement is attached hereto as **Exhibit 1** (filed under seal).

23.    In connection with the FSU Franchise Agreement, the Individual Defendants executed an Agreement To Be Bound And To Guarantee ("FSU Guarantee"). A true and correct copy of the FSU Guarantee is attached as **Exhibit 2** (filed under seal).

24.    Pursuant to the FSU Guarantee, the Individual Defendants "unconditionally guarantee[d] and promise to pay to Cold Stone and/or its Affiliates and to perform…on demand, any and all obligations and liabilities…arising out of the franchise agreement or any other agreement with Cold Stone or its Affiliates."

### The Ocala Store

25.     On or about January 22, 2004, Cold Stone Creamery entered into a franchise agreement with Lenora II for the operation of a Cold Stone Creamery restaurant (the "Ocala Franchise Agreement"), which later opened and is operating at 2701 SW College Road, Ocala, Florida 34474 (Store # 1323).[1]  A true and correct copy of the Ocala Franchise Agreement is attached as **Exhibit 3** (filed under seal).

26.     In connection with the Ocala Franchise Agreement, the Individual Defendants executed an Agreement To Be Bound And To Guarantee ("Ocala Guarantee").  A true and correct copy of the Ocala Guarantee is attached as **Exhibit 4** (filed under seal).

27.     Pursuant to the Ocala Guarantee, the Individual Defendants "unconditionally guarantee[d] and promise to pay to Cold Stone and/or its Affiliates and to perform…on demand, any and all obligations and liabilities…arising out of the franchise agreement or any other agreement with Cold Stone or its Affiliates."

### The Tallahassee Mall Store

28.     On December 27, 2004, Cold Stone Creamery entered into a franchise agreement with Lenora II for the operation of a Cold Stone Creamery restaurant (the "Tallahassee Mall Franchise Agreement"), which later opened and is operating at 2415 North Monroe Street, #1108, Tallahassee, Florida 32312 (store # 213).  A true copy of the Tallahassee Mall Franchise Agreement is attached hereto as **Exhibit 5** (filed under seal).

---

[1] The Ocala Franchise Agreement and the Ocala Sublease are each in the name of Lenora Foods II, LLC. The Florida Secretary of State, however, lists a "Lenora Foods III, LLC" as being organized and filed on March 22, 2004, and which lists the Ocala Store address as the principal address of the corporation. Cold Stone Creamery and Cold Stone Leasing therefore include Lenora Foods III, LLC in this action as a defendant so that the Court may enforce the terms of the Ocala Franchise Agreement as well as the relevant Lanham Act provisions to the extent applicable to this entity.

29.    In connection with the Tallahassee Mall Franchise Agreement, the Individual Defendants executed an Agreement To Be Bound And To Guarantee (the "Tallahassee Guarantee"). A true and correct copy of the Tallahassee Guarantee is attached as **Exhibit 6** (filed under seal).

30.    Pursuant to the Tallahassee Guarantee, the Individual Defendants "unconditionally guarantee[d] and promise to pay to Cold Stone and/or its Affiliates and to perform...on demand, any and all obligations and liabilities...arising out of the franchise agreement or any other agreement with Cold Stone or its Affiliates."

31.    Each of the three franchise agreements (Exhibits 1, 3, and 5) contains the identical provisions.

32.    Pursuant to section 9 of each of the franchise agreements, the defendants were required to submit weekly operating statements and make certain periodic payments to Cold Stone Creamery for royalty fees and advertising fees (collectively, "Fees").

33.    Pursuant to section 9(c) of each of the franchise agreements, the defendants agreed that all Fees not paid within ten days after their due date would bear interest at the rate of 18% per annum."

34.    Pursuant to the franchise agreements, Cold Stone Creamery authorized the defendants to use the System, the Cold Stone Creamery Marks, the trade secrets and goodwill of Cold Stone Creamery, and any improvements and modifications of these items, solely in the operation of defendants' businesses at the three Cold Stone Creamery restaurant locations.

35.    Pursuant to the franchise agreements, the defendants agreed, in order to maintain high and uniform standards of quality and service and thereby protect Cold Stone Creamery's reputation and goodwill, that they would use the Cold Stone Creamery Marks solely in a manner authorized by Cold Stone Creamery and only for the operation

of the franchised business(es) during the term of the franchised business(es) authorized by the franchise agreements.

36.    Pursuant to section 13 of each franchise agreement, the Franchisee agreed that they would not, during the term of the agreement and for the one-year period after its expiration or termination (or one-year following cessation of operation post termination), for any reason, directly or indirectly (as an owner, partner, director, officer, employee, manager, consultant, shareholder, representative, agent, lender or otherwise), be engaged in a business that manufactures, produces, markets or sells ice cream, frozen yogurt or any other frozen dessert product within a 10-mile radius of a Cold Stone Creamery restaurant.

37.    Pursuant to section 16 of each franchise agreement, Cold Stone Creamery could terminate each franchise agreement, with notice to the defendants, for various reasons, including (a) failure to pay any amount due to Cold Stone Creamery under the franchise agreement or sublease within 30 days after receipt of written notice from Cold Stone Creamery, and/or (b) failure to perform any obligation under the franchise agreements on three or more occasions.

38.    Pursuant to section 17 of each of the franchise agreements, upon termination of the agreements, the defendants agreed to: (a) immediately cease using the Cold Stone Creamery Marks, (b) to cancel all assumed names or equivalent business registrations relating to use of the Cold Stone Creamery Marks, (c) to promptly return all property of Cold Stone Creamery, including, but not limited to, Cold Stone Creamery's Operating Manual, and all materials relating to the Cold Stone Creamery Marks, (d) that Cold Stone Creamery could enter the Premises and recover all of its property including, but not limited to, its Operating Manual, and all materials relating to the Cold Stone Creamery Marks, (e) to pay all amounts outstanding to Cold Stone Creamery or its

affiliates, and (f) to the granting of temporary or permanent injunctive relief "without the necessity of posting bond therefor or proof of actual damages" in any action brought by Cold Stone Creamery to force the defendants to comply with their post-termination obligations.

39.     Pursuant to section 31 of each of the franchise agreements, the parties agreed that in any court or arbitration proceeding relating to the franchise agreement, the prevailing party would be entitled to recover its reasonable attorneys' fees and expenses.

## The Subleases

### The Ocala and Tallahassee Mall Subleases

40.     Cold Stone Leasing is the sublessor of the space occupied by the Ocala Store (Store #1323) and the Tallahassee Mall Store (Store #213).

41.     On January 22, 2004, Cold Stone Leasing entered into a sublease (the "Ocala Sublease") with Lenora II for the Ocala Store. A true and correct copy of the Ocala Sublease is attached as **Exhibit 7** (filed under seal).

42.     On December 27, 2004, Cold Stone Leasing entered into a sublease (the "Tallahassee Mall Sublease") with Lenora II for the Tallahassee Mall Store (together with the Ocala Sublease, the "Subleases"). A true and correct copy of the Tallahassee Mall Sublease is attached as **Exhibit 8** (filed under seal).

43.     Under the Subleases, Cold Stone Leasing agreed to sublet the space occupied by the store (the "Subleased Premises") in consideration of the sublessee's agreement to pay monthly rent and other charges, all in accordance with the terms of the Subleases.

44.     Under section 4 of the Subleases, if the sublessee defaulted under the franchise agreement, it would be deemed in default of the Subleases.

45.    In the event of a default of the Subleases, Cold Stone Leasing has the right to retake possession of the Subleased Premises in accordance with section 4 of the Subleases.

46.    Pursuant to section 9 of the Subleases, in the event either party incurs any attorneys' fees or expenses in connection with enforcing its rights under the Subleases, the prevailing party is entitled to recover its reasonable attorneys' fees and expenses.

### The FSU Campus Store Sublease

47.    The FSU Franchise Agreement includes Cold Stone Creamery's standard "Agreement of Intent to Sublet" (Exhibit 1, page G-4), and standard form of Sublease (Exhibit H to the FSU Franchise Agreement (Exhibit 1, pages H-1 through H-20).

48.    The Agreement of Intent to Sublet is completed, by handwritten entries, and the sublease was signed by sublessee Lenora I, as well as defendant Cecil D. Rolle, and consented to by his spouse, Jacquette Rolle.

49.    After entering into the FSU Franchise Agreement, however, and upon the location at 1444 West Tennessee Street, Suite 2, Tallahassee, Florida becoming available, Mr. Rolle alleged to Cold Stone Creamery and Cold Stone Leasing that the landlord would not lease to Cold Stone Creamery or Cold Stone Leasing and would only lease to the Rolles individually.

50.    Further, Mr. Rolle did not allow for Cold Stone Creamery or Cold Stone Leasing to have any communication with the landlord, instead handling all communications himself.

51.    Cold Stone Creamery, in reliance on Rolle's statements, acceded to his request and allowed Lenora I to assume the existing lease for the premises of the FSU Campus Store and to thereafter occupy and establish a Cold Stone Creamery restaurant at

that location.  A true copy of the July 15, 2004 Assignment and Assumption of Lease is attached hereto as **Exhibit 9** (under seal).

**Defaults and Termination of the Franchise Agreements**

52.    Beginning as early as December 6, 2005, and continuing through January 3, 2007, the defendants repeatedly failed to operate their Cold Stone Creamery restaurants in accordance with their franchise agreements by consistently operating below minimum standards, and failing to pay sums due to Cold Stone Creamery, and during this time were notified in writing regarding their various defaults.  Copies of letters dated January 3, 2006, January 20, 2006, April 17, 2006, April 18, 2006, June 19, 2006, June 19, 2006, and August 30, 2006, attached hereto collectively as **Exhibit 10** (filed under seal)[2] .

---

[2]    The applicable provisions of the franchise agreements, each of which has been breached, are as follows:

> Section 7(a) Franchisee must operate the Franchised Business strictly in accordance with Franchisor's Operating Manual, as amended from time to time, and with the rules, regulations, instructions, policies and procedures as may from time to time be issued by Franchisor for the conduct of the Franchised Business as Franchisor may, in it's sole discretion, deem appropriate.

> Section 7(c) Franchisee must not offer or sell any products at or from the premises of the Franchised Business unless Franchisor specifically approves the offering and sale of those products, which approval may be withheld by Franchisor, in it's sole discretion.  In addition, Franchisee may not offer or sell any products specified by Franchisor in any configuration, form or manner other than that specifically approved by Franchisor.

> Section 7(q)(i) Franchisee must obtain and maintain during the term of this Agreement, liability insurance in the minimum amount of $1,000,000, combined single limit for injury to persons or property and a sufficient extended coverage insurance to allow replacement of the restaurant in the event of loss.  In addition, Franchisee must obtain and maintain business interruption insurance in the amount of at least $50,000.  These insurance policies must name Franchisor, Cold Stone Creamery Leasing Company, Inc. (and any other affiliates of Franchisor

53.    By letter dated October 16, 2006, Cold Stone Creamery notified the defendants that they were in default of each of the three franchise agreements and under the Ocala and Tallahassee subleases for failing to comply with monetary obligations (the

---

that it may reasonably require) and Franchisee's area developer (if any) as an additional insured. Certificates of insurance with respect to these insurance policies must be provided to Franchisor with respect to all insurance policies in effect during the term of this Agreement, promptly after the issuance of the insurance policies and as may be requested by Franchisor.

Section 7(g)(ii)  All personnel employed by Franchisee in connection with the Franchised Business must wear a uniform or other clothing approved by Franchisor.

Section 7(b)  Franchisee must offer and sell at the premises of the Franchised Business all products designated by Franchisor, consistent with Franchisor's comprehensive standards and requirements.  In addition, Franchisee must incorporate into the Franchised Business all new products and services designated by Franchisor.

Section 7(e)(i)  Franchisee must purchase all food, supplies, equipment, signage, décor or other items from Franchisor's approved vendors and suppliers.

Section 7(f)  Franchisee must cause the Franchised Business premises to be constructed, equipped and decorated in strict compliance with Franchisor's requirements and in accordance with Franchisee's plans and specifications, as have been approved by Franchisor.

Section 7(p)  Franchisee must pay when due all debts and obligations incurred by Franchisee in connection with the conduct of a Franchised Business.

Section 9.    Franchisee Fees; Royalties; Advertising Fees; Financing Fee; Development Fee.  Franchisee is required to pay to Franchisor (for each individual franchise) an initial Franchise Fee, and Franchisee must pay to Franchisor Royalties in an amount equal to 6% of the sales from all products and services sold at the Franchised Business, whether for on-site or off-site consumption (gross sales).  However, Royalties will be increased up to 18% of gross sales with respect to any week during which Franchisee is in breach of his obligations under this Agreement. (The Royalties paid or owing to Franchisor with respect to the period during which he is in breach are referred to as "Breaching Royalties").

"October 16, 2006 Notice Letter"). A true copy of the October 16, 2006 Notice Letter is attached hereto as **Exhibit 11** (filed under seal).

54.     The October 16, 2006 Notice Letter notified the defendants that their Note payable in the amount of $690,688.00 had matured and had not been paid in full. The October 16, 2006 Notice Letter further notified the defendants that they were required to advise Cold Stone Creamery and Cold Stone Leasing, in writing, within seven (7) days of their receipt of the October 16, 2006 Notice Letter, of any dispute regarding the claimed defaults and to provide Cold Stone Creamery and Cold Stone Leasing with any and all information supporting their claims.

55.     The defendants did not dispute any of the defaults described in the October 16, 2006 Notice Letter.

56.     By letter dated January 3, 2007, Cold Stone Creamery and Cold Stone Leasing notified the defendants that the franchise agreements for all three stores, and all rights thereunder, were terminated, effective immediately (the "Termination Letter"), pursuant to the following sections of the franchise agreements:

- Section 16(a): Franchisee has failed to pay monies owed to Franchisor.

- Section 16(b):  If Franchisee fails to perform any obligation (other than the payment of monies owed to Franchisor) under the Franchise Agreement, or any other agreement with Franchisor.

- Section 16(c): If Franchisee repeatedly fails to pay any monies owed to Franchisor or perform any obligation under the Franchise Agreement.

- Section 16(k): Franchisee has conducted the Franchise Business any manner that may materially and adversely affect the goodwill or reputation of Franchisor, its products or the servicemark.

- Section 16(p): If any other Franchise Agreement or any other agreement between Franchisor and Franchisee is terminated.

A true copy of the January 3, 2007 Termination Letter is attached hereto and incorporated herein as **Exhibit 12** (filed under seal).

**Termination of the Subleases for the Ocala Store and the Tallahassee Mall Store.**

57.    The January 3, 2007 Termination Letter also notified the defendants that they were in default under the Subleases for the Ocala Store and the Tallahassee Mall Store based on their material breach of the following provisions:

> Section 16.1(c) An "Event of Default" shall occur if at any time during the term Sublessee defaults in any obligation under the Franchise Agreement or any other agreement between Sublessor (or it's affiliates) and Sublessee (or it's affiliates), and the same is not cured within ten (10) days after written notice thereof.

> Section 16.2 Upon an "Event of Default" Sublessor may at any time thereafter at its election (a) terminate this Sublease and (b) terminate Sublessee's right of possession in the premises.

58.    The Termination Letter further notified the defendants that Cold Stone Creamery and Cold Stone Leasing intended to take possession of the Ocala Store and the Tallahassee Mall Store.

59.    The defendants have refused to allow Cold Stone Creamery and Cold Stone Leasing to retake possession of each of the three locations, all as required by the franchise agreements.

60.    The Subleases for the Ocala Store and the Tallahassee Mall Store, clearly allow Cold Stone Leasing, as sublessor, to re-enter the premises by summary dispossession proceedings or otherwise and remove the sublessee and all persons and property therefrom, and to thereafter substitute new franchisee(s).

61.    The Agreement of Intent to Sublet and the Sublease, signed by Lenora Foods I for the FSU Campus Store, contain the identical language regarding Cold Stone Leasing's right to re-enter the premises.

62.    The intent and purpose of the Agreement of Intent to Sublet and of the Sublease, all as referenced in the FSU Franchise Agreement, is to allow for Cold Stone Creamery and Cold Stone Leasing to re-enter the premises and to maintain the established location for the Cold Stone Creamery, and, perhaps most importantly, to keep the store continuously operating and servicing the public, thereby protecting the Cold Stone Creamery Marks and goodwill. Thus, in equity, Cold Stone Leasing should be entitled to possession of the premises.

63.    As of June 22, 2007, notwithstanding the termination of all three franchise agreements, the defendants have refused to allow Cold Stone Creamery and Cold Stone Leasing to substitute new franchisees into each of the three locations.

64.    Further, the Individual Defendants continue to block Cold Stone Creamery and Cold Stone Leasing from contacting the landlord or otherwise attempting to secure the FSU Campus Store notwithstanding the clear intent of the parties pursuant to the FSU Franchise Agreement to allow Cold Stone Creamery and Cold Stone Leasing to be the sublessor of the premises and to sublease the space to subsequent or future Cold Stone Creamery franchisees for that location.

## CLAIMS FOR RELIEF

### COUNT ONE
### Federal Trademark Infringement
### (As to all Defendants)

65.    Plaintiffs reallege and incorporate by reference each of the preceding paragraphs.

66.    Section 32 of the Lanham Act, 15 U.S.C. § 1114(1)(a), provides in pertinent part that "[a]ny person who shall, without the consent of the registrant use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive . . . shall be liable in a civil action by the registrant . . . ."

67.    The defendants' unauthorized use and misuse of the Cold Stone Creamery Marks creates the likelihood that consumers will be confused, deceived or misled as to the origin of the Store's services or Cold Stone Creamery's affiliation with or sponsorship of the stores.

68.    The defendants' conduct directly and contributorily infringes Cold Stone Creamery's rights in the Cold Stone Creamery Marks and its federal registration for the marks, and therefore constitutes trademark infringement under Section 32 of the Lanham Act, 15 U.S.C. § 1114(1)(a).

69.    The defendants' conduct has caused and, unless enjoined, will continue to cause, Cold Stone Creamery to suffer immediate, irreparable and continuous loss, damage and injury to its goodwill and business reputation.

70.    Monetary damages will not provide full and adequate relief for all of Cold Stone Creamery's injuries from Defendants' unlawful conduct.  Cold Stone Creamery is therefore entitled to an injunction pursuant to 15 U.S.C. § 1116.

71.    The defendants' acts of infringement are willful and entitle Cold Stone Creamery to recover damages sustained as a result of their unlawful conduct, including the stores' profits, three times Cold Stone Creamery's actual damages, costs of suit and attorneys' fees pursuant to 15 U.S.C. § 1117.

## COUNT TWO
### False Designation of Origin
### (As to all Defendants)

72.    Plaintiffs reallege and incorporate by reference each of the preceding paragraphs.

73.    Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), provides in pertinent part that "[a]ny person who, on or in connection with any goods or services . . . uses in commerce any word, term, name, symbol . . . or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which is likely to cause confusion, or to cause mistake, or to deceive as to affiliation.., or as to the origin, sponsorship, or approval . . . goods [or] services . . . shall be liable in a civil action . . . ."

74.    The defendants' misuse and unauthorized use of the Cold Stone Creamery Marks and name, in connection with its identification of the stores creates the likelihood that consumers will be confused, deceived, and misled as to the source, affiliation or sponsorship of Cold Stone Creamery's products and services.

75.    The conduct of the defendants constitutes false designation of origin and false representation under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

76.    The defendants' conduct has caused and, unless enjoined, will continue to cause, Cold Stone Creamery to suffer immediate, irreparable and continuous loss, damage and injury to its goodwill and business reputation.

77.    Monetary damages will not provide full and adequate relief for all of Cold Stone Creamery's injuries from the defendants' unlawful conduct. Cold Stone Creamery is therefore entitled to an injunction pursuant to 15 U.S.C. § 1116.

78.    The defendants' ongoing infringement is willful and entitles Cold Stone Creamery to recover damages sustained as a result of the defendants' unlawful conduct,

including their stores' profits, three times Cold Stone Creamery's actual damages, costs of suit and attorneys' fees pursuant to 15 U.S.C. § 1117.

**COUNT THREE**
**Breach of Contract - obligation to allow orderly transition**
**(As to all Defendants)**

79.     Plaintiffs reallege and incorporate by reference each of the preceding paragraphs.

80.     Pursuant to Section 17 of the franchise agreements, upon termination of the license and rights under the agreement, all goodwill associated with defendants' franchised business, and defendants' use of the Cold Stone Creamery Marks, is and will be the property of Cold Stone Creamery, and defendants receive no payment therefor; defendants must promptly return to Cold Stone Creamery its Operating Manual, all training materials, all recipes and all other property of Cold Stone Creamery (including all materials relating to the Cold Stone Creamery Marks, the copyrights, the innovations or the proprietary information, all as defined in the agreement).   Cold Stone Creamery may enter the premises of the franchised business and recover all such items.

81.     Pursuant to Section 16.2 of the Sublease agreement, upon an Event of Default, Cold Stone Leasing as sublessor can terminate sublessee's right of possession in the premises, and upon such termination it shall be lawful for sublessor, without formal demand or notice of any kind, to re-enter the premises, by summary dispossession proceedings or otherwise, and to remove sublessee and all persons and property therefrom, and following an Event of Default, Cold Stone Leasing as sublessor shall have the right to keep in place and use, or remove and store, all of the furniture, fixtures and equipment at the premises.

82.     The defendants have refused to allow Cold Stone Creamery and Cold Stone Leasing to retake possession of each of the three locations, all as required by the franchise agreements.

83.     As a direct and proximate result of the defendants' breach of the aforementioned Sections, plaintiffs have suffered and continue to suffer irreparable harm to its reputation, goodwill, and business for which there is no adequate remedy at law.

84.     Pursuant to Section 17(c) of each of the franchise agreements, the defendants agreed and consented to the granting of temporary or permanent injunctive relief "without the necessity of posting bond therefore or proof of actual damages" in any action brought to force the defendants to comply with their post - termination obligations.

85.     Plaintiffs are therefore entitled to retake possession of each of the three locations, to dispossess defendants, and to either substitute in another franchisee, or to operate the premises themselves, and to keep in place and use, or remove and store, all of the furniture, fixtures and equipment.

## COUNT FOUR
### Breach of Contract – Trademark Removal
### (As to Corporate Defendants)

86.     Plaintiffs reallege and incorporate by reference each of the preceding paragraphs.

87.     Pursuant to Section 17 of each franchise agreement, upon termination of the license and rights under the agreement, the defendants were obligated to remove all signs, displays and material bearing the Cold Stone Creamery Marks.

88.     Although the defendants' license and rights under the franchise agreements terminated as of January 3, 2007, they have failed and refused to comply with any of their obligations under Section 17 of each franchise agreement.

89.    The defendants' failure and refusal to allow Cold Stone Creamery to re-enter and substitute franchisees, or alternatively to remove all signs, displays, and material bearing the Cold Stone Creamery Marks constitutes a breach of the franchise agreement.

90.    As a direct and proximate result of the defendants' breach of section 17, Cold Stone Creamery has suffered and continues to suffer irreparable harm to its reputation, goodwill, and business for which there is no adequate remedy at law.

91.    Pursuant to section 17(c) of each of the franchise agreements, the defendants agreed and consented to the granting of temporary or permanent injunctive relief "without the necessity of posting bond therefor or proof of actual damages" in any action brought to force the defendants to comply with their post-termination obligations, including their obligation to cease using the Cold Stone Creamery Marks.

**COUNT FIVE**
**Breach of Contract – Failure to Pay Fees**
**(As to Corporate Defendants)**

92.    Plaintiffs reallege and incorporate by reference each of the preceding paragraphs.

93.    Pursuant to Section 9 of the franchise agreements, the franchisee was obligated to pay certain fees, including but not limited to franchise fees, royalty fees, advertising fees, and financing fees ("Fees") to Cold Stone Creamery upon failure to pay, interest and breaching royalties accrue.

94.    Pursuant to Paragraph 3 of the Sublease agreements, the franchisee was obligated to pay rent ("Rent") to Cold Stone Leasing.  Upon failure to pay, interest and additional fees accrue.

95.    The defendants have failed and refused to pay all of the Fees required under the franchise agreements, and have failed and refused to pay all of the Rent and additional fees under sublease agreements.

96.    The defendants additionally assumed one or more loans through Cold Stone Creamery for the acquisition of furniture, fixtures and equipment along with the buildout of the three Cold Stone Creamery restaurant locations pursuant to the Franchise Agreements (the "Loans").

97.    The defendants have failed and refused to pay the amounts due and owing under the terms of the Loans.

98.    The defendants' failure and refusal to pay the Fees, the Rent, and the Loans that are due and owing constitutes a material breach of the franchise agreements and the Sublease agreements.

99.    As a direct and proximate result of the defendants' breach of the franchise agreements, Cold Stone Creamery has sustained damages.

100.    As of June 1, 2007, the defendants owe $712,262.84 to Cold Stone Creamery.

## COUNT SIX
### Breach of Contract – Underreporting Sales / non payment of Royalty and Fees; Demand for Accounting

101.    Plaintiffs reallege and incorporate by reference each of the preceding paragraphs.

102.    Over the term of the franchise agreements, upon information and belief, the defendants either failed to report sales properly, or intentionally underreported sales, resulting in the defendants paying reduced amounts of royalty and fees.

103.    An accounting is necessary to determine whether underreporting of sales occurred, and to determine the amount of royalty and fees due and owing during the period the defendants have continued to operate following termination.

104.    As a direct and proximate result of the defendants underreporting of sales and non-payment of royalty and fees, Cold Stone Creamery and Cold Stone Leasing have sustained damages.   Plaintiffs request for an independent accounting to be performed.

### COUNT SEVEN
### Breach of Contract – Post-Termination Restrictive Covenants
### (As to all Defendants)

105.    Plaintiffs reallege and incorporate by reference each of the preceding paragraphs.

106.    Defendants have breached, and continue to breach, section 13 of each franchise agreement by owning, operating or managing, directly or indirectly, a business that manufactures, produces, markets or sells ice cream, frozen yogurt or any other frozen dessert product within a 10-mile radius of a Cold Stone Creamery restaurant and within one year after the termination of the franchise agreements.

107.    Defendants' continuing breaches of the restrictive covenants has caused and, unless enjoined, will continue to cause Cold Stone Creamery to suffer immediate, irreparable and continuous loss, damage and injury to its goodwill and business reputation.

108.    Monetary damages will not afford full and adequate relief for all of Cold Stone Creamery's injuries from the defendants' unlawful conduct and, therefore, Cold Stone Creamery is entitled to injunctive relief.

## COUNT EIGHT
### Violation of the Florida Trade Secrets Act
### (As to all Defendants)

109.   Plaintiffs reallege and incorporate by reference each of the preceding paragraphs.

110.   During the course of the parties' franchise relationship the defendants had access to Cold Stone Creamery's proprietary and confidential information and trade secrets, including without limitation information contained in the confidential Operating Manual and other information regarding the operational, sales, promotional and marketing methods and techniques of the Cold Stone Creamery System.

111.   Cold Stone Creamery, at all relevant times, undertook reasonable steps to safeguard all of its confidential and proprietary information.

112.   Cold Stone Creamery's confidential information constitutes "trade secrets" as that term is defined in Fla. Stat. Section 688.02(4) because it is information, including a formula, pattern, compilation, program, device, method, technique, or process that:

a.   Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and

b.   that is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

113.   Pursuant to the franchise agreements, and under Fla. Stat. Section 688.002, the defendants owed Cold Stone Creamery a duty to protect those trade secrets and proprietary information to which they had access in the course of the parties' business relationship.

114.   Upon information and belief, the defendants violated and continue to violate Fla. Stat. Section 688.02 by using and disclosing Cold Stone Creamery's

proprietary information and trade secrets, without Cold Stone Creamery's express or implied consent, in the course of operating the franchised locations.

115.    As a direct and proximate result of the defendants' unauthorized disclosure and misappropriation of Cold Stone Creamery's trade secrets and other proprietary information, Cold Stone Creamery has incurred, and will continue to incur, damages in the form of actual losses, unjust enrichment and/or loss of business opportunities.

116.    Cold Stone Creamery is entitled to injunctive relief, and to be compensated for its actual damages, pursuant to Fla. Stat. Sections 688.003 and 688.004.

117.    Cold Stone Creamery is further entitled to an award of its reasonable attorneys' fees pursuant to Fla. Stat. Section 688.005 because the defendants' misappropriation is willful and malicious.

### COUNT NINE
### Breach of Guarantees
### (As to the Individual Defendants)

118.    Plaintiffs reallege and incorporate by reference each of the preceding paragraphs.

119.    As previously alleged, under the guarantees, the Individual Defendants agreed to unconditionally guarantee all of the franchisees' obligations owed pursuant to each of the franchise agreements.

120.    Despite their obligations to do so, the Individual Defendants have failed and refused to perform the obligations of the franchisees.

121.    The Individual Defendants have also breached, and continue to breach, the restrictive covenants of the guarantees, which prohibit them from owning, operating or managing, directly or indirectly, a business that manufactures, produces, markets or sells ice cream, frozen yogurt or any other frozen dessert product within a 10-mile radius of a

Cold Stone Creamery restaurant and within one year after the termination of the franchise agreements (or one year after cessation of operation post termination).

122.    As a direct and proximate result of the Individual Defendants' breach of the Guarantees, Cold Stone has sustained damages in an amount to be proven at trial.

### COUNT TEN
### Breach of Sublease/Forcible Entry and Detainer
### (As to all Defendants)

123.    Plaintiffs reallege and incorporate by reference each of the preceding paragraphs.

124.    As alleged herein, by breaching the franchise agreements, the defendants have breached the Sublease.

125.    The defendants, and each of them, have failed to cure their defaults under the franchise agreements and therefore are in wrongful possession of the premises.

126.    Pursuant to the Subleases, Cold Stone Leasing is entitled to immediate repossession of the Subleased Premises.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demands judgment against each of the defendants as follows:

(1)    That the Court issue a preliminary injunction enjoining each of the defendants, as well as their agents, servants, employees, and all those in active concert or participation with them, from the following:

(a)    Using or displaying the Cold Stone Creamery Marks in any manner, including but not limited to, use on signs, posters, point-of-sale materials, sales promotion materials, menu boards, menu-board strips, paper goods, product packaging, cups, lids, utensils, manuals, or any other items, on the building or

premises of the Store, or at any other location, without a license from Cold Stone Creamery;

(b)    Using or displaying any of Cold Stone Creamery's copyrighted materials in any way on the building or premises of the stores without permission from Cold Stone Creamery;

(c)    Owning, operating or managing, directly or indirectly, a business that manufactures, produces, markets or sells ice cream, frozen yogurt or any other frozen dessert product within a 10-mile radius of a Cold Stone Creamery restaurant and within one year after the termination of the franchise agreements; and

(d)    Using any of Cold Stone Creamery's confidential or proprietary information, including but not limited to, recipes, formulae, patterns, compilations, programs, devices, methods, techniques, or processes as set forth in the franchise agreements or operations manual or otherwise defined in Fla. Stat. Section 688.02(4).

(2)    That the Court, pursuant to 15 U.S.C. § 1116, order the defendants to file with the Court and serve on Cold Stone Creamery within 30 days after service on the defendants of an order of injunction, a written report, under oath, setting forth in detail the manner and form in which the defendants have complied with the injunction;

(3)    That the Court order the defendants to account to Cold Stone Creamery for any and all profits derived as a result of marketing or promoting their services at the stores, or elsewhere, through and with the Cold Stone Creamery Marks.

(4)    That the Court order the defendants, and all parties occupying the Subleased Premises, to vacate the premises immediately, and that Cold Stone Leasing be restored to immediate and exclusive possession thereof; that in the event the defendants

refuse to obey this order, issue a writ of restitution commanding the Sheriff to forcibly remove the defendants or the occupant of the Subleased Premises, and restore Cold Stone Leasing to peaceable possession thereof; and, if necessary, to also issue a writ of execution authorizing the Sheriff to seize and sell any amount of the defendants' property necessary to satisfy the monetary judgment obtained herein;

(5)　　That the Court award Cold Stone Creamery the amount of $712,262.84, along with any and all Fees, Rent, Loans or otherwise due and owing to Plaintiffs through underreporting;

(6)　　That the Court award Plaintiffs their reasonable attorneys' fees pursuant to 15 U.S.C. § 1117 or any other statute or applicable contract provision;

(7)　　That the Court award Plaintiffs their costs of suit and related non-taxable expenses;

(8)　　That the Court award Plaintiffs pre- and post-judgment interest on the foregoing sums at the highest rate allowable by law until paid in full; and

(9)　　That the Court award Plaintiffs any other relief it deems appropriate.

DATED this __3RD__ day of __July__, 2007.

**GREENBERG TRAURIG, P.A.**
101 East College Avenue
Post Office Drawer 1838
Tallahassee, Florida 32302
Phone: (850) 222-6891
Fax: (850) 681-0207

_____
**LORENCE JON BIELBY**
**Florida Bar No. 0393517**
**JOHN K. LONDOT**
**Florida Bar No. 0579521**

## VERIFICATION

STATE OF ARIZONA
COUNTY OF MARICOPA

BEFORE ME, the undersigned authority, personally appeared **MELANIE HANSEN**, as a representative of Cold Stone Creamery, Inc. and as a representative of Cold Stone Leasing, Inc., who being first duly sworn, deposes and says that he/she has reviewed this Verified Complaint for Injunctive Relief and Damages, and that the foregoing complaint is true and correct to the best of his/her knowledge, information and belief.

_Melanie Hansen_
Signature

MELANIE HANSEN
Name (Print)

GENERAL COUNSEL
Position / Office

9311 E. VIA DE VENTURA
(Business Address)
SCOTTSDALE, AZ 85258
(Business Address)

STATE OF ARIZONA
COUNTY OF MARICOPA

The foregoing instrument was acknowledged before me this 2ND day of JULY, 2007, by MELANIE HANSEN, as General Counsel and Secretary of Cold Stone Creamery, Inc., and as General Counsel of Cold Stone Leasing, Inc., who is personally known to me (or who has produced as identification) and did (did not) take an oath.

NOTARY PUBLIC

_Jennifer Tyrrell_
Name:
State of ARIZONA, At Large
My Commission Expires: Sept. 9, 2009

(SEAL)

OFFICIAL SEAL
JENNIFER TYRRELL
NOTARY PUBLIC - State of Arizona
MARICOPA COUNTY
My Comm. Expires Sept. 9, 2009