# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF FLORIDA
# TALLAHASSEE DIVISION

COLD STONE CREAMERY, INC.,
etc., et al.,

      Plaintiffs,

v.                                            CASE NO.  4:07cv303-RH/WCS

LENORA FOODS, LLC, etc.,
et al.,

      Defendants.

_____/

## **PRELIMINARY INJUNCTION**

Plaintiff Cold Stone Creamery, Inc. ("Cold Stone") franchises ice cream stores. Cold Stone has given notice terminating franchises for three stores operated by two limited liability companies—defendants Lenora Foods I LLC ("Lenora I") and Lenora Foods II LLC ("Lenora II"). Lenora I and Lenora II are owned by defendant Jacquette Rolle. Her husband, defendant Cecil D. Rolle, is the general manager of all three stores. Two of the stores ("the Tallahassee Mall store" and "the Ocala store") already have closed. Cold Stone has moved for a preliminary

injunction precluding defendants from continuing to operate the remaining store ("the Tennessee Street store") and from continuing to use Cold Stone's marks. I grant the motion.

I

Entry of a preliminary injunction is governed by a well-established four-factor test, under which the moving party must establish a substantial likelihood of success on the merits, that he or she will suffer irreparable injury unless the injunction issues, that the threatened injury outweighs whatever damage the proposed injunction may cause the opposing party, and that the injunction would not be adverse to the public interest. *See, e.g., McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998); *United States v. Lambert*, 695 F.2d 536 (11th Cir. 1983). Cold Stone has met each of these requirements.

II

Cold Stone has demonstrated a substantial likelihood of success on the merits in at least two respects.

A

First, it is undisputed that Lenora I—the franchisee of the Tennessee Street store that remains open—is several months behind in the payment of royalty and advertising fees owed to Cold Stone based on sales at that location. Under the

franchise agreement, failure to pay these fees entitled Cold Stone to terminate the agreement. *See* Franchise Agreement for Store 1605 at page C-27 (document 2-2 at page 29 of 34) (authorizing Cold Stone to terminate franchise agreement for failure to pay any amount owed under franchise agreement after notice and 30-day cure period).

Lenora I says its failure to pay has resulted from this litigation and the concomitant need to pay attorney's fees. The greater weight of the evidence indicates that Lenora I was in arrears even before this litigation began, but this would not matter anyway. Cold Stone's filing of its claims in this litigation—at least some of which appear from this record to be well founded—does not excuse Lenora I from its obligation to pay the royalty and advertising fees

B

Second, it also is undisputed that Lenora II—the franchisee of the Tallahassee Mall and Ocala stores—is similarly in arrears on royalty and advertising fees for those stores, and was when this litigation began. Failure to pay those fees entitled Cold Stone to terminate the franchise agreements on those stores.

Lenora II also is in default on a promissory note whose proceeds were used for start up costs at those stores. Indeed, Lenora II never made a single payment on

that note.  Cold Stone guaranteed the note, bought it when Lenora II defaulted, and now holds the note.  Failure to pay the note entitled Cold Stone to terminate the Lenora II franchise agreements.  *See, e.g.,* Franchise Agreement for Store 213 at page C-12 (document 2-9 at page 14 of 32) (requiring franchisee to "pay when due all debts and obligations incurred by Franchisee in connection with the conduct of the Franchised Business").

Based on Lenora II's failure to pay the Tallahassee Mall and Ocala store royalty and advertising fees and failure to pay the note—any of which would be sufficient standing alone—Cold Stone's termination of the Lenora II franchise agreements was proper.  The termination of those agreements entitled Cold Stone also to terminate the *Lenora I* franchise agreement applicable to the Tennessee Street store.  *See* Franchise Agreement for Store 1605 at page C-30 (document 2-2 at page 32 of 34) (authorizing Cold Stone to terminate agreement if "any other franchise agreement . . . between [Cold Stone] and . . . Franchisee [Lenora II] *or any of his Affiliates* is terminated.") (emphasis added).  Lenora I and Lenora II plainly are affiliates—they are limited liability companies owned by the same person.  *See, e.g., Black's Law Dictionary* 63 (8th ed. 2004) (defining affiliate as a "corporation that is related to another corporation by shareholdings or other means of control; a subsidiary, parent, or sibling corporation.").

### C

In sum, based on both Lenora I's own default in payment of royalty and advertising fees on the Tennessee Street store, and Lenora II's defaults in payment of royalty and advertising fees and the promissory note related to the Tallahassee Mall and Ocala stores, Cold Stone was entitled to terminate the Lenora I franchise agreement on the Tennessee Street store. Upon proper termination of the franchise agreement, defendants plainly have no right to continue using Cold Stone's marks. Cold Stone is likely to prevail on the merits.

### III

The other prerequisites to a preliminary injunction are easily met. Unauthorized use of a trademark ordinarily causes irreparable harm to the mark's owner. The balance of harms and public interest ordinarily favor restricting unauthorized use of marks. I find that Cold Stone will suffer irreparable harm if defendants continue to use Cold Stone's marks beyond a brief period sufficient for an orderly termination of Lenora I's operation of the store. I find that the balance of harms and the public interest favor issuance of an injunction except during a brief period sufficient for an orderly termination of Lenora I's operation of the store. The balance will shift—even during the transition period—if Lenora I fails to operate in good faith, denigrates the marks or Cold Stone's goodwill, or fails to

pay royalty and advertising fees owed for the period of continued operation.

IV

Federal Rule of Civil Procedure 65 provides for the giving of security as a condition of a preliminary injunction. The franchise agreement, however, expressly provides that Cold Stone is not required to provide security. Whether such a provision is valid may be subject to question. I conclude that, even if such a provision is valid, it means only that a court is not *required* to condition a preliminary injunction on the giving of security; a court nonetheless retains the authority to do so as a matter of discretion. I conclude that adequate security should be required here, and I find that an unsecured undertaking by Cold Stone to pay damages incurred by any person wrongly enjoined, up to $500,000, will constitute sufficient security.

V

For these reasons,

IT IS ORDERED:

1. Plaintiffs' motion for preliminary injunction (document 54) is GRANTED.

2. Defendants shall not use any Cold Stone mark at any location except as authorized by this order.

3. Until 11:59 p.m. on December 31, 2007, defendant Lenora Foods I LLC may continue to operate the existing Tennessee Street Cold Stone store if (a) it does so in good faith and in accordance with the terms of the franchise agreement as they would apply if the agreement had not been terminated, (b) it does not disparage Cold Stone or its products or otherwise impair Cold Stone's goodwill, and (c) it pays when due all royalty and advertising fees arising from operations on or after December 5, 2007.

4. This preliminary injunction will take effect upon the filing of an undertaking by plaintiffs stating that they "agree to pay such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained by the preliminary injunction announced in open court on December 4, 2007, and reduced to writing on December 8, 2007, up to $500,000." If no such undertaking is filed by December 14, 2007, this preliminary injunction will be of no further force or effect.

5. This preliminary injunction is binding on defendants and their officers, agents, servants, employees, and attorneys, and on those persons in active concert or participation with them who receive actual notice of this order by personal

service or otherwise.

  SO ORDERED this 8th day of December, 2007, at 4:30 p.m.

               <u>s/Robert L. Hinkle</u>
               Chief United States District Judge